UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

CHRISTIAN KILLORAN, *on behalf of his son*,
A.K.,

                                  Plaintiff,

       -against-

WESTHAMPTON BEACH SCHOOL
DISTRICT, MICHAEL RADDAY –
*Superintendent*, CYNTHIA PARRY –
*Program Administrator*, SUE MENSCH,
JAMES HULME, CLAIRE BEAN, HALSEY
STEVENS, GEORGE KAST – *As Board Of
Education Members*,

                              Defendants.

---------------------------------------------------------------x

**REPORT AND
RECOMMENDATION**

18-cv-3389 (JS)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

      By way of Complaint dated June 11, 2018, Plaintiff Christian Killoran

("Plaintiff" or "Mr. Killoran") commenced this action, on behalf of his son, A.K.,

against Defendants Westhampton Beach School District (the "School District"),

Michael Radday – Superintendent ("Radday"), Cynthia Parry – Program

Administrator ("Parry"), Sue Mensch ("Mensch"), James Hulme ("James Hulme"),

Claire Bean ("Bean"), Halsey Stevens ("Stevens"), and George Kast – As Board Of

Education Members ("Kast," together with Radday, Parry, Mensch, Hulme, Bean,

and Stevens, the "Individual Defendants," and collectively with the School District,

"Defendants"), alleging, *inter alia*, violations of A.K's civil rights under: (i) Title II of

the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*;

(ii) Section 504 of the Rehabilitation Act of 1973 ("Section 504" or the "Rehabilitation

Act"), 29 U.S.C. § 701 *et seq*.; (iii) the New York State Human Rights Law ("NYSHRL"); and (iv) 42 U.S.C. § 1983 ("Section 1983"). *See* Complaint ("Compl."), Docket Entry ("DE") [1].[1]  Presently before the Court, on referral from the Honorable Joanna Seybert for Report and Recommendation, is Defendants' motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  DE [21].  For the reasons set forth below, the Court respectfully recommends converting the motion to a motion for summary judgment and dismissing the Complaint with prejudice.

I.   **Background**

   A.   **Relevant Facts**

The following facts are taken from the parties' pleadings, declarations/affidavits, exhibits, and the remaining record.[2]  The factual allegations set forth in Killoran's Complaint, although sparse, are accepted as true, and the remaining facts are not genuinely in dispute unless otherwise noted.

This action is one in a series of civil rights litigations brought against the School District and related parties by Plaintiff and his wife, Terrie Killoran ("Mrs. Killoran") on behalf of their son, A.K., who has Down Syndrome and was fifteen years old when this case was commenced (the Court refers to these additional matters as the "Other Lawsuits").[3]  Although the majority of the Other Lawsuits assert claims

---

[1] Plaintiff, an attorney, originally filed his Complaint *pro se*.  *See* DE [1].  On April 19, 2019, however, counsel appeared on Mr. Killoran's behalf, *see* DE [20], and, in turn, prepared and filed the opposition to the instant motion.  *See* DE [26].

[2] As discussed below, the Court recommends converting the instant motion to one for summary judgment in light of both parties' submission of affidavits and related exhibits.  *See* Section II(B), *infra*.

[3] *See* Related Matters:  Case Nos. 15-cv-4743, 17-cv-866, 17-cv-3553, 19-cv-3298, 19-cv-5078, 19-cv-6663, and 20-cv-269.

relating to A.K.'s education, the instant matter only concerns Plaintiff's claim that Defendants unlawfully discriminated against A.K. by refusing to allow him to serve as a volunteer in the School District's summer recreation program (the "Summer Program"). *See generally* Compl.

According to the Complaint, the Summer Program provides students with a place to engage in various recreational activities during the summer and enlists volunteers to assist in various tasks associated with its operation. *See* Compl. ¶¶ 3, 4. In 2018, A.K. applied for a volunteer position with the caveat that he would be accompanied by an aide who would "be responsible for his general well-being and would assist in A.K.'s performance of any assigned task." *See id.* ¶¶ 5, 6. Defendants declined to offer A.K. a role despite his purported capability to be a meaningful contributor. *See id.* ¶¶ 8, 10. Plaintiff asserts that this denial was an act of unlawful disability discrimination and in retaliation for the Other Lawsuits. *See id.* ¶ 11.

Turning to the record, Parry, an elementary school teacher within the School District and the Director of the Summer Program, prepared an affidavit further detailing relevant undisputed facts. *See generally* Declaration of Kelly E. Wright ("Wright Decl."), DE [21-1], Ex. C, Affidavit of Cynthia Parry ("Parry Aff."), DE [21-4]. Parry states that the Summer Program, which is akin to a camp, runs Monday through Friday from 9:00 a.m. to 12:00 p.m. for four weeks each July and is available to students in kindergarten through eighth grade. *See id.* ¶ 5. In addition to employing paid adult staff to facilitate the Summer Program, the School District permits students who are too old to attend (*i.e.*, high school students) to serve as

volunteers who do not get paid but generally receive "service credit for school or college application purposes." *See id*. ¶¶ 7-8. The volunteers "shepherd the younger student participants from task to task and are entrusted with safely supervising … and accompanying them to the nurse, restrooms and other locations." *See id*. ¶ 9. These student volunteers are expected to work independently without adult oversight and must "assume responsibility for the 'comings and goings' of the children." *See id*. ¶ 11. In short, the volunteers' "primary responsibility is to … oversee the safe transport of children from activity to activity." *See id*.

While A.K. was the appropriate age, he participated in the Summer Program. *See id*. ¶ 12. Once A.K. became too old to attend the program, his mother sought to enlist him as a volunteer, emailing Parry on May 23, 2018 inquiring how she could have him "sign up." *See id*.; *see also* Wright Decl., Ex. E, DE [21-6] at 8-19 (the "Email Correspondence"). On May 30, 2018, Parry responded to Mrs. Killoran, stating that the School District takes on volunteers "who can work effectively with the younger students and be responsible for their safety." *See* Email Correspondence. As a result, Parry continued, "the volunteers must be independent and able to assume care-taking responsibilities of the children assigned to them so as to assure, primarily, a safe environment." *See id*. Notwithstanding Parry's "concerns about whether and how" A.K could viably serve as a volunteer, *see* Parry Aff. ¶ 12, she asked Mrs. Killoran what role she envisioned A.K. undertaking. *See* Email Correspondence. In response, Mrs. Killoran suggested that A.K., with the assistance of his 1:1 aide, could "help in anyway the team would need," such as being a line leader, handing out

4

materials, cleaning up, passing out sporting equipment, making copies, watering plants, keeping score of sporting events, delivering materials to the nurse, and running errands. *See id*. There was no suggestion by Mrs. Killoran then or by Mr. Killoran herein that their son could supervise children.

Following a determination by the School District that "A.K. could not meaningfully perform the essential functions of a volunteer" in light of his lack of "the requisite degree of independence to supervise or be entrusted with the safety of younger children in the program," Parry informed Mrs. Killoran on June 6, 2018 that A.K. would not be permitted to participate. *See* Parry Aff. ¶ 14; *see also* Email Correspondence ("We have fully considered utilizing A.K. as a volunteer in the [Summer Program]. However, upon review, we must advise that we are not able to accommodate this request. The paramount responsibility of the program's administration is assuring the safety of the children…. Volunteers are charged with independent duties that include the oversight and monitoring of … children….").[4]

Mrs. Killoran, unhappy with the School District's refusal to hire A.K. as a volunteer, requested more information concerning the decision-making process and the volunteer program itself while imploring Parry to consider her son for alternative tasks. *See* Affidavit of Terrie Killoran in Opposition to Defendants' Motion to Dismiss ("Killoran Aff."), DE [29], ¶¶ 28-30. Still dissatisfied with Parry's response, Mrs.

---

[4] Although the School District determined that "involving A.K. as volunteer … would not serve the interests of safety and welfare of the program participants," there is no dispute that A.K. was never excluded from being a *participant* in the program while he was the appropriate age. *See* Wright Decl., Ex. E., Affidavit of Michael Raddy ("Raddy Aff."), DE [21-5], ¶ 9. Further, A.K. serves as a volunteer on the sidelines of the School District's lacrosse games – a role that does not involve supervising children. *See id*.

Killoran sought various documents and records via New York's Freedom of Information Law ("FOIL"). *See id.* ¶¶ 30-34.[5]

### B.    **Procedural History**

Based on the above, Plaintiff commenced this action on June 11, 2018. *See* DE [1].[6]  Although the Complaint fails to delineate causes of actions, it inidcates that Defendants' conduct amounts to unlawful:  (i) discrimination pursuant to Title II of the ADA, Rehabilitation Act, and NYSHRL; (ii) retaliation under the ADA; and (iii) violations of the Due Process and Equal Protection Clauses of the  Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983.  *See* Compl. ¶¶ 1, 12, 13-14, 17.  In addition, the Complaint seeks:  (i) a "temporary injunction enjoining the defendants from refusing to accept and process A.K.'s … application to serve as a volunteer"; (ii) the ordered production of various documents pursuant to Mrs. Killoran's FOIL request; and (iii) a declaratory judgment stating that the alleged conduct violates A.K.'s rights.  *See id.*, Wherefore Clause.

Simultaneously with the filing of the Complaint, Plaintiff moved by Order to Show Cause for a preliminary injunction "enjoining the defendants from refusing to accept and implement the application of A.K. to serve as a volunteer within the

---

[5] The Court notes that Plaintiff makes multiple references to his qualms with Angela Austin's – the School District's "Director of Pupil Personnel who was in charge of the … Special Education Program" – failure to include the volunteer position as part of A.K.'s Individualized Educational Program ("IEP"). *See, e.g.* Killoran Aff. ¶¶ 5-14; Pltf.'s Mem at 8. Ms. Austin, however, is not named in this lawsuit nor does the Complaint assert claims concerning the IEP, which appears to be contested in other proceedings.  *See* Killoran Aff. ¶¶ 11-13.

[6] On June 18, 2018, Mrs. Killoran separately filed a complaint with the New York State Division of Human Rights regarding the alleged discrimination at issue herein. *See* Killoran Aff., Ex. D.  That matter was dismissed in light of Mrs. Killoran's "inten[t] to pursue federal remedies in court." *Id.*

[Summer Program]."  *See* DE [5].  Defendants opposed the equitable relief sought on June 15, 2018, *see* DE [9], and Judge Seybert heard oral argument on June 19, 2018, before ultimately denying the request for injunctive relief (the "PI Hearing").  *See* DE [13].  *See also* Transcript of Order to Show Cause (the "PI Transcript"), DE [21-3].

Defendants filed their Answer on June 22, 2018.  *See* DE [14].  On December 12, 2018, Defendants wrote Judge Seybert stating their intention to file the instant motion for judgment on the pleadings.  *See* DE [17].  This Court held an initial conference on January 8, 2018 and stayed discovery in light of the ongoing motion practice.  *See* DE [19].  The motion was fully briefed on June 14, 2019 and subsequently referred to this Court for Report and Recommendation.  *See* DEs [21] – [32]; October 8, 2019 Electronic Order Referring Motion.  In arguing that the Complaint should be dismissed, Defendants contend that Killoran fails to state any viable causes of action pursuant to the ADA, Rehabilitation Act, NYSHRL, Section 1983, or FOIL.  *See generally* Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint ("Def.'s Mem."), DE [21-9].  In response Plaintiff contends that the papers submitted by both sides in connection with the motion indisputably demonstrate that Defendants discriminated against A.K. by reason of his disability.  *See generally* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pltf.'s Mem."), DE [26].

## II.   Legal Standards

### A.   <u>Motions for Judgment on the Pleadings</u>

"Judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c) is appropriate where material facts are undisputed and a judgment on the merits is possible merely by considering the contents of the pleadings." *Mennella v. Office of Court Admin.*, 938 F. Supp. 128, 131 (E.D.N.Y. 1996), *aff'd*, 164 F.3d 618 (2d Cir. 1998) (citing *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988)).   The standard for addressing a Rule 12(c) motion mirrors that for a Rule 12(b)(6) motion to dismiss for failure to state a claim.   *See Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013); *see also Cleveland v. Caplaw Enterprises*, 448 F.3d 518, 521 (2d Cir. 2006).   Thus, to survive a motion to dismiss pursuant to either Rule 12(b)(6) or Rule 12(c), a complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007).   At this stage, the Court must accept Plaintiff's factual allegations as true and draw all reasonable inferences in his favor.   *See LaFaro v. New York Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).   Although the Court is "confined to the allegations … of the complaint … [it] may also consider documents attached to the complaint as an exhibit or incorporated … by reference." *Carlin v. Davidson Fink LLP*, 852 F.3d 207, 212 (2d Cir. 2017) (internal quotations and citations omitted).   Accordingly, a Rule 12(c) motion should be granted "if, from the pleadings, the moving party is entitled to judgment as a matter of law." *Dargahi v. Honda Lease Trust*, 370

F. App'x 172, 174 (2d Cir. 2010) (quoting *Burns Int'l Sec. Servs., Inc. v. Int'l Union*, 47 F.3d 14, 16 (2d Cir. 1995) (*per curiam*)).

### B.    Converting Motions to Dismiss to Summary Judgment

Notwithstanding the foregoing, "[i]f matters outside the pleadings are presented to the court, a court may convert the motion to dismiss into [one for] summary judgment." *Vailette v. Lindsay*, No. 11-cv-3610, 2014 WL 4101513, at *3 (E.D.N.Y. Aug. 18, 2014) (citing Fed. R. Civ. P. 12(d) ("If, on a motion under Rule … 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."); *see also Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) ("When matters outside the pleadings are presented in response to a … motion [to dismiss], a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment … and afford all parties the opportunity to present supporting material.") (internal quotation, citation, and alterations omitted).   Whether to convert the motion is within the district court's discretion.  *See Vested Bus. Brokers, Ltd. v. Cty. of Suffolk*, No. 16-cv-4945, 2017 WL 4122616, at *3 (E.D.N.Y. Sept. 15, 2017) (collecting cases), *aff'd*, 741 F. App'x 39 (2d Cir. 2018).  Although the Court "must ordinarily give notice to the parties before converting a motion to dismiss to a motion for summary judgment … a party 'is deemed to have notice … if that party should reasonably have recognized the possibility that such a conversion would occur.'" *Almonte v. Pub. Storage Inc.*, No. 11-cv-1404, 2011 WL 3902997, at *1 (S.D.N.Y. Sept. 2, 2011) (quoting *Sira v. Morton,* 380

F.3d 57, 68 (2d Cir.2004)); *see also In re G. & A. Books, Inc.*, 770 F.2d 288, 295 (2d Cir. 1985) ("The essential inquiry is whether the [party] should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings.").

Here, conversion to a summary judgment motion is appropriate because both parties submitted and relied on affidavits and exhibits in support of their arguments. *See, e.g.*, Parry Aff.; Raddy Aff.; Killoran Aff.; Email Correspondence; *Garcha v. City of Beacon*, 351 F. Supp. 2d 213, 216 (S.D.N.Y. 2005) ("Where both parties submit extrinsic evidence in support of their positions, a district court may fairly convert a motion to dismiss into one for summary judgment") (internal citations omitted). Moreover, although Plaintiff argues that discovery would support his claims, *see* Pltf.'s Mem. at 6, he also concedes that the motion should be judged on more than the pleadings. *See*, *e.g.*, *id*. at 1 ("The undisputed facts contained in Mrs. Killoran's Affidavit clearly show Defendants' discriminatory actions and the need for relief."); *id*. at 2 ("We refer the Court to Mrs. Killoran's affidavit for the facts."); *id*. at 21 ("Plaintiff submits that … on the indisputable facts in this case … Defendants' discriminatory and retaliatory actions against A.K. are clear."); *see also* Killoran Aff. ¶ 3 ("the documents submitted by Defendants on the instant motion to dismiss, particularly the [Email Correspondence], clearly show … [Defendants'] continued pattern of discrimination and retaliation against [A.K.]"). Accordingly, the Court respectfully recommends exercising its discretion to convert the instant motion to one

for summary judgment and consider the entire record in dismissing this action with prejudice. *See SIFCO Indus., Inc. v. Advanced Plating Techs., Inc.*, 867 F. Supp. 155, n. 2 (S.D.N.Y. 1994) ("The parties should not be surprised if the Court considers materials which they themselves have submitted; therefore, we elect to convert this motion to dismiss into a motion for summary judgment, and interpret the expanded record accordingly.").

## C.    Motions for Summary Judgment

Pursuant to Fed. R. Civ. P. 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986) (holding that a motion for summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). The movant bears the burden of establishing that there are no issues of material fact such that summary judgment is appropriate. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2004).

Once the movant has met his initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356 (1986) (internal quotation omitted); *see also Maxton v. Underwriter Labs., Inc.*, 4 F. Supp. 3d 534, 542 (E.D.N.Y. 2014) ("An issue of fact is considered 'genuine' when a reasonable finder of fact could render a verdict in favor of the non-moving party"). In determining whether summary judgment is warranted, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986); *see also Artis v. Valls*, No. 10-cv-427, 2012 WL 4380921, at n.10 (N.D.N.Y. Sept. 25, 2012) ("It is well established that issues of credibility are almost never to be resolved by a court on a motion for summary judgment").

## III.    Discussion

As a preliminary matter, the Court notes that Plaintiff's opposition to the instant motion fails to advance arguments in support of his NYSHRL, Retaliation, Due Process, FOIL, or Declaratory Judgment claims. Accordingly, the Court finds that Mr. Killoran has abandoned these causes of action. *See, e.g.*, *City of Perry, Iowa v. Procter & Gamble Co.*, 188 F. Supp. 3d 276, 287 (S.D.N.Y. 2016) (citing *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08-cv-442, 2014 WL 4723299,

at *7 (S.D.N.Y. Sept. 23, 2014) ("A plaintiff abandons a claim where he raises it in the complaint but remains silent on the issue elsewhere in the record…. At the motion to dismiss stage … a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim") (internal citations omitted)); *Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.") (citing *Douglas v. Victor Capital Group,* 21 F.Supp. 2d 379, 393 (S.D.N.Y.1998) (collecting cases)). Nevertheless, the Court briefly addresses the merits of those claims, in turn, to the extent feasible.

### A.   Title II of the ADA, Rehabilitation Act, and NYSHRL

The crux of this lawsuit concerns whether Defendants discriminated against A.K. because of his disability when they declined to allow him to participate in the Summer Program as a volunteer. As discussed below, Mr. Killoran's claims fail as a matter of law.

Initially, the Court considers Plaintiff's claims under the ADA and the Rehabilitation Act (the "Acts") together. Though there are minor differences between the two statutes, courts regularly analyze claims under both identically and simultaneously. *See, e.g., Henrietta D. v. Bloomberg,* 331 F.3d 261, 272 (2d Cir. 2003) (citing *Rodriguez v. City of New York,* 197 F.3d 611, 618 (2d Cir. 1999) ("Because Section 504 of the Rehabilitation Act and the ADA impose identical requirements, we consider these claims in tandem.")); *Garcia v. S.U.N.Y. Health Scis.*

13

*Ctr. of Brooklyn*, 280 F.3d 98, 113 (2d Cir. 2001) (Section 504 and the ADA "offer essentially the same protections for people with disabilities"). Nevertheless, the Court recognizes that the statutes are not exactly the same, but "nearly identical." *See McElwee v. Cty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012); *see also Logan v. Matveevskii*, 57 F. Supp. 3d 234, 253 (S.D.N.Y. 2014) ("there are 'subtle differences' between" the statutes) (internal citation omitted). Most notably, the laws differ in that the reach of Section 504 is limited to denials of benefits "*solely* by reason of ... disability," 29 U.S.C. § 794(a) (emphasis added), while the ADA applies more broadly to such denials "by reason of ... disability." 42 U.S.C. § 12132; *see also Cercpac v. Health & Hosps. Corp.,* 147 F.3d 165, 167 (2d Cir. 1998). In addition, Section 504 requires a showing that the defendant has received federal funding. *Henrietta D.,* 331 F.3d at 272. Here, neither of these distinctions are at issue. Accordingly, the Court considers Plaintiff's claims under the statutes together. *See Cercpac,* 147 at 167 ("Apart from the Rehabilitation Act's limitation to denials of benefits 'solely' by reason of disability and its reach of only federally funded ... entities, these provisions purport to impose precisely the same requirements. [When] neither difference affects the disposition of [a dispute], [courts] need not consider the statutes separately.").

i.    <u>Discrimination</u>

To analyze the sufficiency of discrimination claims under the Acts, the Second Circuit employs a three-part test whereby Plaintiff must demonstrate that: (i) A.K. is a qualified individual with a disability; (ii) Defendants are entities covered by the statutes; and (iii) A.K. was denied the opportunity to participate in or benefit from

14

the School District's services, programs, or activities, or was otherwise discriminated against by Defendants, by reason of his disabilities. *Henrietta D.*, 331 F.3d at 272 (2d Cir. 2003) (citing *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir.1998)). The parties agree that A.K. has a disability and that Defendants are subject to the Acts. *See* Def.'s Mem. at 8-9. Thus, the dispute centers on whether A.K. is a "qualified individual with a disability," *i.e.*, "an individual with a disability who, with or without reasonable modifications … meets the essential eligibility requirements for … participation in the programs or activities provided by a public entity," 42 U.S.C. § 12131(2), and whether Defendants denied him the opportunity to volunteer for the Summer Program because of his disability.

As for the third element, discriminatory conduct may take the form, as it allegedly does here, of a refusal to afford a reasonable accommodation. *See Davis v. Shah,* 821 F.3d 231, 260 (2d Cir. 2016) (citing *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009)) ("A plaintiff may base [his] discrimination claim on … [a] failure to make a reasonable accommodation."). To that end, discrimination under the Acts occurs when defendants fail to make a reasonable accommodation that would "permit [a qualified individual] to have access to and take a meaningful part in public services." *Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 85 (2d Cir. 2004) (internal citations omitted); *see also Henrietta D.*, 331 F.3d at 283 ("A 'reasonable accommodation' is one that gives the otherwise qualified plaintiff with disabilities 'meaningful access' to the program or services sought.") (quoting *Alexander v. Choate,* 469 U.S. 287, 301, 105 S. Ct. 712 (1985)).

15

The Acts, however, do not require that a disabled person be provided with every accommodation he requests. *See McElwee*, 700 F.3d at 641 (2d Cir. 2012) (citing *Fink v. New York City Dep't of Pers.*, 53 F.3d 565, 567 (2d Cir. 1995)). Indeed, covered entities do not need to make accommodations that would "fundamentally alter the nature of the service, program, or activity." *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 187 (2d Cir. 2015) (citing *Alexander,* 469 U.S. at 300, 105 S. Ct. 712; *Powell*, 364 F.3d at 88 ("a defendant need not make an accommodation at all if the requested accommodation would fundamentally alter the nature of the … program") (quoting 28 C.F.R. § 35.130(b)(7))).

In some instances, the lack of a covered entity's engagement in an informal "interactive process" to determine whether it is practicable to accommodate a disability bolsters a claim of liability. *See McBride v. BIC Consumer Prod. Mfg. Co.*, 583 F.3d 92, 99 (2d Cir. 2009) (citing *Jackan v. New York State Dep't of Labor*, 205 F.3d 562, 566 (2d Cir. 2000); 29 C.F.R. § 1630.2(o)(3)). "That being said, the ADA imposes liability for, *inter alia,* discriminatory refusal to undertake a feasible accommodation, not mere refusal to explore possible accommodations where, in the end, no accommodation was possible." *Id*. (internal citation omitted). Thus, a failure to engage in the interactive process is only actionable if, among other things, a good faith effort to assist the disabled could have resulted in a reasonable accommodation. *Picinich v. United Parcel Serv.*, 321 F. Supp. 2d 485, 511 (N.D.N.Y. 2004).

Here, Plaintiff's claims are deficient because there is no allegation or evidence that A.K. could be accommodated as a volunteer absent fundamentally changing the

nature of the activity itself.  Specifically, the core purpose of the Summer Program's volunteers is the supervision of children.  *See* Parry Aff. ¶¶ 7-11.  A.K., however, requires accompaniment by his own 1:1 aide.  *See, e.g.*, Killoran Aff. ¶ 25.  Indeed, A.K.'s parents never suggested that any accommodation could be made such that he could supervise the Summer Program's participants, *i.e.*, the campers.  Instead, Mrs. Killoran proposed several ancillary tasks – such as being a line leader, cleaning, and keeping score of sporting events – that her son was capable of performing with the help of his aide, essentially requesting that the School District create a new position to accommodate A.K.'s needs.  *See* Email Correspondence; Killoran Aff. ¶ 25. Similarly, at the PI Hearing, Plaintiff argued that a "modification of the [School] District's existing [volunteer] policy," would allow A.K. to participate in a host of activities not related to supervisory duties.  *See* PI Transcript 7:10-8:10.  In essence, Plaintiff contends that his proposed alteration of the position itself is reasonable, as opposed to claiming a reasonable accommodation exists that would enable A.K. to engage in the fundamental volunteer responsibility of watching children.  *See* Pltf.'s Mem. at 14 ("Defendants need only reasonably modify their exclusionary policy of requiring volunteers to be able to directly supervise the program's participants…. [I]t remains clear that [Defendants] could effectuate a reasonable modification, which would facilitate [A.K.'s] integration as a volunteer").  The School District, however, is not obligated by law to make such a modification in order to achieve this outcome. *See*, *e.g.*, *Powell*, 364 F.3d at 88 (Covered entities are not required to "make any

accommodation … [that] would fundamentally alter the nature of the service, program, or activity").

In reaching this conclusion, the Court rejects Plaintiff's assertion that the School District advanced a "straw man" argument describing the essential role of volunteers only *after* hearing what Mrs. Killoran suggested A.K.'s contribution could be, *see* Pltf.'s Mem. at 7, as this contention is belied by the undisputed record.  Indeed, Mrs. Killoran's own email chain confirms that when she first inquired about whether A.K. could volunteer, Parry's initial response indicated that volunteers are "responsible for [child] safety," and "must be independent and able to assume care-taking responsibilities of the children assigned to them so as to assure, primarily, a safe environment."  *See* Email Correspondence (which Plaintiff does not dispute is accurate).  It was only then that Mrs. Killoran suggested various alternative ways in which A.K. could contribute.  *See id*.  Thus, although Parry reiterated A.K. would not be able to volunteer in light of his inability to supervise children in response to Mrs. Killoran, the undisputed record demonstrates that this foundational requirement was relayed from the start.  *See id*.

Mr. Killoran's contention that Defendants failed to engage in the interactive process is similarly without merit.  *See* Pltf.'s Mem. at 7, 20.  Specifically, Plaintiff continues to conflate the issues, arguing that the School District's refusal to adequately consider changing the role altogether was discriminatory, rather than asserting that any feasible accommodation might enable A.K. to serve the Summer Program volunteers' existing supervisory role.  *See id*. at 20 ("by simply modifying its

policy of mandating that <u>all</u> volunteers must be able to directly supervise …
participants, A.K. would be able to serve as a volunteer, performing tasks such as
those outlined by [Mrs. Killoran] as well as those additional tasks on which aide could
assist") (emphasis in original).  This argument fails as a matter of law because the
Acts do not require Defendants to fundamentally alter their volunteer program's core
responsibilities.   Accordingly, the Court respectfully recommends dismissing Mr.
Killoran's Title II ADA and Section 504 discrimination/failure to accommodate
claims.

ii.    <u>Retaliation</u>

The Court further recommends dismissing Plaintiff's cause of action alleging
that Defendants refused to hire A.K. as a volunteer for the Summer Program in
retaliation for the Other Lawsuits.  "To state a claim for retaliation under the ADA
or Rehabilitation Act, a plaintiff must show:  (i) he or she was engaged in protected
activity; (ii) the alleged retaliator knew that plaintiff was involved in protected
activity; (iii) an adverse decision or course of action was taken against plaintiff; and
(iv) a causal connection exists between the protected activity and the adverse action."
*Patrick v. Success Acad. Charter Sch., Inc.*, 354 F. Supp. 3d 185, 226 (E.D.N.Y. 2018)
(addressing retaliation in the public services context) (citing *Lawton v. Success Acad.
Charter Sch., Inc.*, 323 F. Supp. 3d 353, 366 (E.D.N.Y. 2018) (quoting *Weixel v. Bd. of
Educ.*, 287 F.3d 138, 148 (2d Cir. 2002))).[7]

---

[7] Although Title II of the ADA does not contain its own statutory proscription against retaliation, Title
V's general anti-retaliation provision contemplates such protections.  *See Volpe v. New York City Dep't
of Educ.*, 195 F. Supp. 3d 582, 592 (S.D.N.Y. 2016) ("[42 U.S.C. § 12203], which appears in Title V of
the ADA, prohibits retaliatory discrimination against an individual who has opposed any practice

Here, there is no apparent disagreement as to whether the Other Lawsuits constitute protected activity that the School District (a defendant in those actions) knew about, and that the refusal to allow A.K. to volunteer for the Summer Program was adverse.  Thus, the dispute hinges on whether there is a causal connection between the Other Lawsuits and the refusal to hire A.K. as a volunteer.

The Court considers the analogous employment-related context in assessing whether a causal connection exists, which occurs when a plaintiff establishes "that the allegedly adverse actions occurred in circumstances from which a reasonable jury could infer retaliatory intent." *Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002).  "A causal connection in retaliation claims can be shown either '(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment … or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'" *Littlejohn v. City of New York*, 795 F.3d 297, 319 (2d Cir. 2015) (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)).  Although the Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal

---

which the ADA makes unlawful.") (citing 42 U.S.C. § 12203(a) ("No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.")); *see also Warren v. Goord*, No. 99-cv-296, 2006 WL 1582385, at *17 (W.D.N.Y. May 26, 2006) ("[Title II] ADA retaliation claims …. are governed by Title V…."), *aff'd*, No. 06-3349-PR, 2008 WL 5077004 (2d Cir. Nov. 26, 2008).  Moreover, federal regulations prohibit retaliation in connection with claims brought pursuant to Title II of the ADA and Section 504 of the Rehabilitation Act.  *See* 28 C.F.R. § 35.134(a) ("No … public entity shall discriminate against any individual because that individual has opposed any act or practice made unlawful by this part, or because that individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the [ADA] or this part."); 34 C.F.R. § 104.61 (incorporating the anti-retaliation provisions of Title VI of the Civil Rights Act of 1964 to the Rehabilitation Act).

relationship," *Gorman-Bakos v. Cornell Co-op Extension*, 252 F.3d 545, 554 (2d Cir. 2001), courts have held that a gap of more than a few months defeats any inference of a causal connection. *See Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007) ("district courts within the Second Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation.") (collecting cases); *see also Campbell v. Home Depot U.S.A., Inc.*, No. 03-cv-1421, 2006 WL 839001, at *13 (S.D.N.Y. Mar. 30, 2006), *aff'd sub nom.*, 221 F. App'x 21 (2d Cir. 2007) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'") (quoting *Clark County School Dist. v. Breeden,* 532 U.S. 268, 273, 128 S. Ct. 1508 (2001)).

Here, the record indicates that no causal connection exists between the Other Lawsuits and the School District's refusal to offer A.K. a volunteer position. Initially, there is no direct evidence of retaliatory animus. As for circumstantial evidence, the Other Lawsuits were commenced as early as August 13, 2015, *see* Related Case No. 15-cv-4743, and the alleged retaliation against A.K. did not occur until nearly three years later. *See* Email Correspondence. Further, Plaintiff does not dispute that the School District allowed A.K. to volunteer with the lacrosse team (a role that does not involve supervising children) and to attend the Summer Program as a participant while he was the appropriate age, both while the Other Lawsuits were pending. *See*

21

Radday Aff. ¶ 9; Defs.' Mem. at 10, 15. This temporal gap combined with A.K.'s participation in other School District programs and activities renders the inference of a causal connection untenable in the absence of other evidence of retaliatory animus.[8] Accordingly, the Court respectfully recommends dismissing the Complaint insofar as it asserts a cause of action for retaliation.

### iii.    Individual Liability

Mr. Killoran's attempt to hold the Individual Defendants liable under the Acts is also misguided.[9] As an initial matter, as discussed above, the ADA and Section 504 causes of action fail on their merits, rendering any extension to the Individual Defendants deficient as well. *See* Sections III(A)(i)-(iv), *supra*. Moreover, "neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials." *Garcia,* 280 F.3d at 105 (collecting cases); *see also Givens v. City of N.Y.*, No. 11-cv-2568, 2012 WL 75027, at *4 (S.D.N.Y. Jan. 10, 2012) (stating that discrimination, including failure to accommodate and retaliation claims under the ADA, are not enforceable against individuals). Accordingly, the Court respectfully recommends dismissing the action as against the Individual Defendants.

### iv.    NYSHRL

The Court similarly concludes that any NYSHRL claims asserted by Plaintiff are subject to dismissal. Notably, the Complaint does not refer to any specific

---

[8] The Court notes that at the PI Hearing, Judge Seybert found that Defendants has not retaliated by virtue of A.K.'s volunteer role for the lacrosse program. *See* PI Transcript 23:6-10.

[9] The Complaint contains no mention of the Individual Defendants anywhere other than the caption. *See generally* Compl.

provisions of the statute, and Mr. Killoran's opposition to the instant motion is devoid of a single reference to the statute. *See generally* Compl.; Pltf.'s Mem. Dismissal on this basis itself is appropriate. *See City of Perry, Iowa*, 188 F. Supp. 3d at 287 (citing *Romeo & Juliette Laser Hair Removal, Inc.*, 2014 WL 4723299, at *7 ("A plaintiff abandons a claim where he raises it in the complaint but remains silent on the issue elsewhere in the record….").

In any event, "New York State disability discrimination claims are governed by the same legal standards as federal ADA claims." *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, n. 1 (2d Cir. 2004) (citing *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, n. 1 (2d Cir.2000)).[10] Accordingly, the Court respectfully recommends dismissing any NYSHRL causes of action for the same reasons as the ADA and Rehabilitation Act claims.

## B.   Title I of the ADA

Plaintiff's argument, raised for the first time in opposition to the instant motion, that the employment discrimination provisions of Title I of the ADA apply to his claims, *see* Pltf.'s Mem. at 8, is similarly without merit. As a threshold matter, "[v]olunteers constitute employees under … the ADA *only if* they receive some kind of direct or indirect financial benefit or promise thereof from an employer." *Pastor v. P'ship for Children's Rights*, No. 10-cv-5167, 2012 WL 4503415, at *1 (E.D.N.Y. Sept.

---

[10] On August 12, 2019, several amendments to the NYSHRL were signed into law. These changes are not applicable to the instant lawsuit and, in any event, do not apply retroactively to claims that accrued prior to October 11, 2019. *See Chauhan v. MM Hotel Mgmt. LLC*, No. 18-cv-5963, 2019 WL 6118006, at n. 7 (E.D.N.Y. Nov. 18, 2019); *Wellner v. Montefiore Med. Ctr.*, No. 17-cv-3479, 2019 WL 4081898, at n. 4 (S.D.N.Y. Aug. 29, 2019).

28, 2012) (emphasis added), *aff'd*, 538 F. App'x 119 (2d Cir. 2013) (citing *O'Connor v. Davis*, 126 F.3d 112, 115–16 (2d Cir. 1997)). "Financial benefits might be in the form of a salary or wages, or benefits such as medical insurance, retirement pensions, life or disability insurance, vacation time, sick pay, and/or a promise of any of the above." *Id.* (citing *Pietras v. Bd. of Fire Commn'rs of Farmingville Fire Dist.,* 180 F.3d 468, 471, 473 (2d Cir.1999)). Here, the record demonstrates that no financial benefits are associated with the volunteer position. Accordingly, Title I of the ADA is inapplicable.

Moreover, Mr. Killoran's ADA claim would fail as a matter of law under Title I for similar reasons as under Title II. To establish a cause of action for a failure to accommodate in the employment context, it must be demonstrated that: "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *McMillan v. City of N.Y.*, 711 F.3d 120, 125-26 (2d Cir. 2013). Here, there is no dispute that A.K. is unable to perform the essential function of the Summer Program's volunteers (*i.e.*, supervising children) even with accommodations. Accordingly, for both of these reasons, the Court respectfully recommends that the Complaint be dismissed insofar as it is construed as asserting a claim under Title I of the ADA.

     **C.**     **42 U.S.C. § 1983**

Turning to Plaintiff's constitutional claims, Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983.  Although Section 1983 itself does not create substantive rights, it does provide "a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).  To prevail on a claim arising under 42 U.S.C. § 1983, a plaintiff must demonstrate: "(1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law." *Hawkins v. Nassau Cty. Corr. Facility*, 781 F. Supp. 2d 107, 111 (E.D.N.Y. 2011) (citing 42 U.S.C. § 1983).

The Complaint contends that not hiring A.K. as a volunteer for the Summer Program violates his rights under the Equal Protection and Due Process Clauses of the Constitution.  The Court concludes that both causes of action are untenable because they are redundant to his federal statutory claims.  Specifically, rather than arguing that Defendants' alleged conduct amounted to independent constitutional violations pursuant to the Equal Protection and Due Process clauses, Plaintiff contends that the ADA and Section 504 are "grounded in [A.K.'s] … right of 'equal protection," such that "any violation of the [Acts] simultaneously postures as a [constitutional] violation."  *See* Pltf.'s Mem. at 21.  In other words, according to Killoran, the Equal Protection clause is "codified within the [Acts]."  *See id*.  This contention fails as a matter of law.  A plaintiff asserting discrimination claims pursuant to a federal statute may only bring a concurrent Section 1983 cause of action

if the "claim is based on a distinct violation of a constitutional right. *Lener v. Hempstead Pub. Sch.*, 55 F. Supp. 3d 267, 281 (E.D.N.Y. 2014) (quoting *Gierlinger v. New York State Police*, 15 F.3d 32, 34 (2d Cir. 1994)). Thus, a "claim of disability discrimination … premised upon the substantive rights secured by the ADA … is not actionable under § 1983." *Id.* (collecting cases).

Here, Killoran's concession that his constitutional claims are identical to his ADA and Section 504 causes action, without any allegation of additional deprivations, renders them deficient. Accordingly, the Court respectfully recommends dismissing the Complaint inasmuch as it asserts Equal Protection or Due Process claims pursuant to Section 1983.

### D. <u>Freedom of Information Law</u>

Having concluded that each of Plaintiff's federal claims should be dismissed, the Court further recommends declining to exercise supplemental jurisdiction over Mr. Killoran's New York State FOIL cause of action. *See Quiroz v. U.S. Bank Nat'l Ass'n*, No. 10-cv-2485, 2011 WL 2471733, at *8 (E.D.N.Y. May 16, 2011) (recommending that the district court decline to exercise supplemental jurisdiction after all federal claims were dismissed) *report and recommendation adopted*, 2011 WL 3471497 (E.D.N.Y. Aug. 5, 2011). Supplemental jurisdiction is governed by 28 U.S.C. § 1367, which provides that, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . " 28 U.S.C. §

1367(a).  The court may, however, "decline to exercise supplemental jurisdiction if it has dismissed all claims over which is has original jurisdiction." *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (citing 28 U.S.C. § 1367(c)(3)) (internal quotations omitted).  Accordingly, the Court respectfully recommends that Plaintiff's FOIL claim also be dismissed without prejudice in light of the Court's recommendation that his federal causes of action should be dismissed with prejudice.[11]

### E.    Declaratory Judgment

Finally, the Court recommends denying Plaintiff's request for "a declaratory judgment evidencing the fact that the defendants have violated [A.K.'s] rights."  *See* Compl., Wherefore Clause.  As discussed above, each of Mr. Killoran's substantive claims fail as a matter of law, rendering the issuance of a declaratory judgment unwarranted.  *See* Section III(A)-(C), *supra*.

## IV.    Conclusion

For the reasons set forth above, the Court respectfully recommends converting Defendants' motion for judgment on the pleadings to a motion for for summary judgment and dismissing this action with prejudice.

---

[11] Even if the Court were to exercise supplemental jurisdiction over the FOIL cause of action, dismissal would still be warranted because Mr. Killoran has failed to exhaust his administrative remedies with respect to this claim.  *See Tinker St. Cinema v. State Dep't of Transp.*, 254 A.D.2d 293, 294, 678 N.Y.S.2d 124, 125 (2d Dep't 1998) ("It is well established that before a person seeking information under FOIL may resort to a judicial forum to gain relief, he must have exhausted his administrative remedies.") (citing *Matter of Kurland v. McLaughlin*, 122 A.D.2d 947, 949, 505 N.Y.S.2d 967 (2d Dep't 1986); *Matter of Newton v. Police Dep't of City of N.Y.*, 183 A.D.2d 621, 585 N.Y.S.2d 5 (1st Dep't 1992); N.Y. Pub. Off. Law § 84(4)(b) (internal quotation and brackets omitted)); *see also Schuloff v. Fields*, 950 F. Supp. 66, 67 (E.D.N.Y. 1997) ("The appropriate vehicle for challenging denials of access guaranteed by the New York Freedom of Information law is a state court proceeding pursuant to … Article 78….") (internal citations omitted).

## V.    Objections

A copy of this Report and Recommendation is being served on all parties by electronic filing on the date below.    Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days of receipt of this report.    Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a); *Ferrer v. Woliver*, 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:        Central Islip, New York
              February 12, 2020            /s/ Steven I. Locke
                                           STEVEN I. LOCKE
                                           United States Magistrate Judge